# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

A blue Apple iPhone with black Otter box case currently located at the ATF Columbus I Field Office, 230 West Street, Suite 300, Columbus, Ohio 43215

Case No. 2:23-mj-125

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
A blue Apple iPhone with black Otter box case currently located at the ATF Columbus I Field Office, 230 West Street, Suite 300, Columbus, Ohio 43215

located in the    Southern    District of    Ohio   , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment A to the Affidavit submitted in support of the Application for this warrant.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18 USC § 922(g)(1) | Felon in Possession of a Firearm |
| Title 21 USC § 841(a)(1) | Possession With Intent to Distribute Narcotics |
| Title 21 USC § 846 | Conspiracy |

The application is based on these facts:
See Attached Affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Janna Penfield, ATF Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2/27/2023

Chelsey M. Vascura
United States Magistrate Judge
*Judge's signature*

City and state: Columbus, Ohio

Chelsey M. Vascura, U.S. Magistarte Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE FOLLOWING IPHONE: BLUE IPHONE WITH BLACK OTTERBOX CASE, INCLUDING ANY REMOVABLE STORAGE MEDIA CONTAINED WITHIN THE PHONES, CURRENTLY LOCATED AT ATF COLUMBUS I FIELD OFFICE, 230 WEST STREET, SUITE 300, COLUMBUS, OHIO 43215. | Case No. 2:23-mj-125 |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Janna Penfield, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property described herein—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in further detail in Attachment A.

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been since in August 2018. Prior to becoming a Special Agent with ATF, I was a United States Probation Officer with the United States Probation Department through the Southern District of Ohio from October 2014 through January 2018. Additionally, from August 2007 through October 2014, I was a Parole Officer through the State of Ohio, which included a special assignment position with the United States Marshal Service as a Task Force Officer on the Southern Ohio Fugitive Apprehension Strike Team. I have completed the

Federal Criminal Investigator Training Program and the ATF Special Agent Basic Training at the Federal Law Enforcement Training Center in Glynco, Georgia. I have also completed the Initial Pretrial and Probation Training Program at the Federal Law Enforcement Training Center in Charleston, South Carolina, and the State of Ohio Parole Academy in Columbus, Ohio. In addition to the firearms, arson, and explosives related training received in these courses, I have also conducted and participated in investigations involving firearms and narcotics. Further, I have conducted investigations utilizing cellular telephone data, including but not limited to precision locates, cell-site activation information as well as reviewing call detail information.

3. The facts in this Affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This Affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. I did not, however withhold any information or evidence that would negate probable cause.

4. Based on the facts set forth in this Affidavit, there is probable cause to believe that Bernard Clark McMILLON, (hereinafter "McMILLON") has violated the following federal laws: Title 18, United States Code Section 922(g)(1), Felon in Possession of a Firearm; Title 21, United States Code Section 841(a)(1), Possession With Intent to Distribute Controlled Substances; and Title 21, United States Code Section 846, Conspiracy. These offenses are referred to throughout as the TARGET OFFENSES. As explained within, there is probable cause to search the cellular telephone device identified below for evidence of the TARGET OFFENSES as described in Attachment A.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

5. The property to be searched is a blue Apple iPhone with a black Otter box case, including any removable storage media contained within the phone, (hereinafter "the **TARGET TELEPHONE**"). The **TARGET TELEPHONE** is currently located at the ATF Columbus I Field Office, 230 West Street, Suite 300, Columbus, Ohio 43215. As explained below, the **TARGET TELEPHONE** was recovered from the residence of 2186 Springmont Avenue, Columbus, Ohio during the execution of a search warrant. Additionally, this is the same residence where McMILLON was arrested on a Federal Arrest Warrant because of a criminal complaint filed in Case No. 2:23MJ34 (S.D. Ohio).

6. The applied-for warrant would authorize the forensic examination of the **TARGET TELEPHONE** for the purpose of identifying electronically stored data particularly described in Attachment A.

## PROBABLE CAUSE

7. Since October 2022, Your Affiant and ATF Task Force Officers (TFOs) have been investigating a narcotic trafficking organization, who are known to use and/or possess firearms, in the Columbus, Ohio area. This investigation ultimately resulted in S/A Penfield obtaining a criminal complaint charging McMILLON with violating Title 18, United States Code Section 922(g)(1) along with an arrest warrant (Docket Number 2:23MJ34) after McMILLON was found in possession of firearm during a traffic stop.

8. One of the individuals identified working with McMILLON is Kristol COOPER. COOPER is also a multi-convicted felon, who is also prohibited from possessing firearms and/or ammunition. Since October 21, 2022, on five separate occasions, ATF and Columbus Police Department (CPD) have jointly conducted a least five (5) controlled purchases from

3

McMILLON and others at four (4) different locations within the City of Columbus. On several of these occasions, to include October 21, 2022, firearms were present where the controlled purchase was conducted. Throughout the investigation, McMILLON and COOPER have moved the location of their armed narcotics activities several times.

9. On January 12, 2023, a State of Ohio search warrant was obtained from a Judge with the Franklin County Court of Common Pleas for a search warrant for the GPS location and pen register / trap and trace for the telephone number 937-208-0937, the known telephone number for McMILLON. After obtaining this search warrant, on February 7, 2023, investigators were able to determine, through physical and electronic surveillance, that McMILLON and COOPER moved their narcotics trafficking operation to the residence of 2186 Springmont Avenue, Columbus, Ohio. While conducting physical surveillance at the residence of 2186 Springmont Avenue, Columbus, Ohio, investigators observed several individuals enter and exit the residence using the back gate within a short period of time. Additionally, McMILLON was observed exiting the front door of the residence, approach a truck parked in front of the residence, and return to the residence within minutes. The GPS location for McMILLONs phone was also in the area of 2186 Springmont Avenue, Columbus, Ohio during the same time.

10. Based upon the above information, on February 13, 2023, a state search warrant was obtained for the residence of 2186 Springmont Avenue, Columbus, Ohio. On the same date, members of CPD INTAC made entry into the residence to execute the search warrant. McMILLON was one of the occupants located inside the residence and arrested for his outstanding federal warrant. Prior to transporting McMILLON to the Federal Courthouse, McMILLON asked S/A Penfield if he could get his phone. McMILLON described the phone and

4

provided S/A Penfield with his telephone number of 614-208-0937 (**TARGET TELEPHONE**). McMILLONs phone was located on the countertop of the kitchen inside the residence.

11. While McMILLON was being transported to the Federal Courthouse, ATF S/As and TFOs executed the search warrant at the residence (2186 Springmont Avenue) and seized several other items of evidence to include a Glock, model 45, 9mm pistol bearing serial number BMYL845, loaded with 27 rounds of ammunition; an Aero Precision, model X15, .223 pistol bearing serial number X305415, loaded with 18 rounds of ammunition; a Norinco, model 98, 12 gauge shotgun bearing serial number 0034179, loaded with one round of ammunition; other suspected narcotics; and approximately $8,500 in U.S. currency.

12. According to the analysis performed by FS2 Drug Chemist Kathleen Stuebe, the substances tested positive for the following: Cocaine, Net Weight: 14.869 grams +/- 0.008 grams at a coverage probability of 95.4%; Clonazolam, Net Weight: 22.964 grams +/- 0.032 grams at a coverage probability of 95.4%; Fentanyl and Ketamine, Net Weight: 1.526 grams +/- 0.008 grams at a coverage probability of 95.4%; Cocaine, Net Weight: 10.604 grams +/- 0.008 grams at a coverage probability of 95.4%; Cocaine, Net Weight: 0.297 grams +/- 0.008 grams at a coverage probability of 95.4%; Fentanyl, Net Weight: 33.754 grams +/- 0.008 grams at a coverage probability of 95.4%; Fentanyl, Net Weight: 6.371 grams +/- 0.008 grams at a coverage probability of 95.4%; and Methamphetamine, Net Weight: 14.347 grams +/- 0.008 grams at a coverage probability of 95.4%.

## TARGET TELEPHONE RELATIONSHIP TO ILLEGAL ACTIVITY

13. The **TARGET TELEPHONE** identified in this requested search warrant was recovered from inside the residence where McMILLON and others were suspected on conducting narcotics trafficking.

5

14. The **TARGET TELEPHONE** is currently in the lawful possession of the ATF. While ATF might already have all necessary authority to examine the **TARGET TELEPHONE**, I seek this additional warrant out of an abundance of caution to be certain that an examination of the **TARGET TELEPHONE** will comply with the Fourth Amendment and other applicable laws.

15. I know through training and experience that cellular telephone devices are commonly used to access social media such as the Instagram, Facebook, or SnapChat to receive and exchange messages related to unlawful acts.

16. **TARGET TELEPHONE's Relationship to the violation of 18 U.S.C. § 922(g)(1):** As indicated above, the investigation has indicated that McMILLON was found to be in possession of a firearm on December 1, 2022, during a traffic stop conducting by CPD as well as three additional firearms seized as a result of the search warrant executed on February 13, 2023. I know through my training and experience, and in speaking with other law-enforcement officers, that cellular telephone devices are commonly used to arrange unlawful transactions— including the unlawful sale of firearms to prohibited persons; to facilitate those straw purchases through the exchange of photographs of the relevant firearms and proposed terms of payment; and to assist potential straw purchasers and intended recipients in meeting up with one another through use of the phone's GPS and mapping software and applications. Moreover, I know through training and experience that individuals who illegally possess firearms often keep information on their cellular phones related to the firearms, including communications regarding the firearms, information regarding the purchase and possession of the firearms, and picture(s) of the firearms.

17. **TARGET TELEPHONE's relationship to 21 U.S.C. § 841(a):** The investigation has indicated that McMILLON is a narcotics trafficker prior to his apprehension in this case. As referenced above in paragraph #8, on at least five separate occasions, ATF and Columbus Police Department (CPD) have jointly provided conducted a least five (5) controlled purchases from McMILLON and others at four (4) different locations within the City of Columbus. Furthermore, as referenced in paragraph #12, several narcotics were seized following the execution of the search warrant at the residence of 2186 Springmont Avenue, where McMILLON was arrested. Your Affiant is aware from training and experience that narcotics traffickers often use their cellular phones to store information related to the trafficking of narcotics, as well as communicate regarding their narcotics trafficking, including to set up drug deals.

18. In my training and experience, I know that the **TARGET TELEPHONE** has been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when the **TARGET TELEPHONE** first came into the ATF's possession. When the **TARGET TELEPHONE** was seized, investigators powered them off or placed them into airplane mode to maintain their integrity.

19. Moreover, relevant here, Your Affiant knows individuals commonly use their cell phones to send text messages, voice messages, video messages and other chat based or social media platforms to discuss and plan their criminal activities. Call logs, text logs, and content records showing such an arrangement are likely to still be on the **TARGET TELEPHONE**. Additionally, Your Affiant knows that individuals take pictures of their firearms, narcotics, and illegally derived proceeds, and those pictures can be stored on the devices. In addition, cellular telephones are commonly in the physical possession of owners which would yield information as

7

to where the conspirators may be meeting, secreting the firearms into vehicles, acquiring firearms for the purpose of diversion to the criminal market, or other actions in furtherance of the conspiracy. Location data stored on the **TARGET TELEPHONE** is likely to show where the target cellular telephone was located during times of service, and that information, combined with other records, may display a time that all identified telephone numbers for co-conspirators were in the same general area of one another. The information sought in this warrant will further establish the patterns of those involved in the conspiracy.

## TECHNICAL TERMS

20. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also

include global positioning system ("GPS") technology for determining the location of the device.

b. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0–255, separated by periods (e.g., 121.56.97.178). Every computer or cellular telephone (beyond 2G technology) attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer or cellular telephone may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

c. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

21. Based on my training, experience, and research, I know that the **TARGET TELEPHONE** has capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and personal digital assistant ("PDA"). In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

9

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

22. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the **TARGET TELEPHONE**. This information can sometimes be recovered with forensics tools.

23. *Forensic evidence.* As further described in Attachment A, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **TARGET TELEPHONE** was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the **TARGET TELEPHONE** because data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   a. Forensic evidence on a device can also indicate who has used or controlled the **TARGET TELEPHONE**. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   b. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   c. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review

team and passed along to investigators. Whether data stored on a computer/cellular telephone is evidence may depend on other information stored on the computer and the application of knowledge about how a computer/cellular telephone behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

d. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

24. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **TARGET TELEPHONE** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the **TARGET TELEPHONE** to human inspection to determine whether it is evidence described by the warrant.

25. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

26. Based on my knowledge, training, experience, and the investigation to date, I further submit that there is probable cause to believe that the property to be searched as described contains evidence, as described in Attachment A, of a violation of the following federal laws: Title 18, United States Code Section 922(g)(1), Felon in Possession of a Firearm;

Title 21, United States Code Section 841(a)(1), Possession With Intent to Distribute Controlled Substances; and Title 21, United States Code Section 846, Conspiracy.

27. Based on the foregoing, I request that the Court issue the proposed search warrant under Federal Rule of Criminal Procedure 41 to search the **TARGET TELEPHONE** as described and to seize those items set forth in Attachment A which constitute evidence, fruits, and instrumentalities of a violation(s) of the TARGET OFFENSES.

Respectfully submitted,

Janna Penfield
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn to before me
on this 27th day of February 2023.

CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE

## **ATTACHMENT A**

1.　All records and information on the **TARGET TELEPHONE** described in the Affidavit in support that constitutes evidence of a violation of violation(s) of the TARGET OFFENSES (see attached Affidavit) involving Bernard Clark McMILLON named in the Affidavit in support of this warrant application, since mid-October 2022, to present, including but not limited to the following:

    a.　lists of contacts and related identifying information;

    b.　photographs;

    c.　internet history;

    d.　GPS data;

    e.　Text messages or messages stored in other messaging platforms;

    f.　Data stored on the **TARGET TELEPHONE** through social media platforms to include, Facebook, Instagram, Snapchat, and other unnamed platforms similar in nature;

    g.　any information related to sources of firearms (including names, addresses, phone numbers, or any other identifying information);

    h.　any information related to destination sources of firearms (including names, addresses, phone numbers, or any other identifying information);

    i.　any information recording the schedule or travel from 2022 to the present related to the user(s) of the **TARGET TELEPHONE**;

    j.　all bank records, checks, credit card bills, account information, and other financial records;

    k.　Stored electronic mail messages;

2. Evidence of user attribution showing who used or owned the **TARGET TELEPHONE** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history; and

3. Records evidencing the use of the Internet Protocol address to communicate with unnamed servers, including:

    a. records of Internet Protocol addresses used; and

    b. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

4. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.